# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

FILIBERTO GONZALEZ-RODRIGUEZ,

            Petitioner,

v.                                                              No. CIV 11-250 JP/LFG

LEE VAUGHN, WARDEN,

            Respondent.

## MAGISTRATE JUDGE'S FINDINGS
## AND RECOMMENDED DISPOSITION[1]

### Findings

1.     This is a proceeding on a petition for writ of habeas corpus brought by Filiberto Gonzalez-Rodriguez ("Gonzalez") under 28 U.S.C. § 2241, filed March 21, 2011 [Doc. 1]. Respondent filed a Response [Doc. 7] on April 20, 2011, and asked the Court to dismiss the petition for failure to state a claim. On May 4, 2011, Gonzalez filed a reply [Doc. 8.] The Court has carefully reviewed the pleadings, attachments and pertinent law.

2.     Gonzalez is currently confined at the Cibola County Correctional Institution in Milan, New Mexico. On December 15, 2008, Gonzalez pled guilty to the crime of "Re-Entry after

---

[1] Within fourteen (14) days after a party is served with a copy of these findings and recommendations, that party may, pursuant to 28 U.S.C. § 636(b)(1), file written objections to such findings and recommendations. A party must file any objections with the Clerk of the U.S. District Court within the fourteen-day period allowed if that party wants to have appellate review of the findings and recommendations. If no objections are filed, no appellate review will be allowed.

1

Deportation." [Doc. 7, Ex. 1.] He was sentenced to a term of 57 months with credit for time served. Upon release, he is to be placed on supervised release for a term of three (3) years. The sentence was imposed on May 27, 2009. [Id.]

      3.      While serving his sentence at the Cibola County Correctional Institution, Gonzalez was charged with violating prison regulation 219A, stealing – aiding and abetting. [Doc. 1, Doc. 7.] After a hearing before a Disciplinary Hearing Officer ("DHO"), Gonzalez was adjudged guilty of the violation. His punishment included forfeiture of 27 days of good time credit. [Id.]

      4.      As grounds for federal habeas review, Gonzalez claims he was denied due process by not having been allowed to present written statements by prison staff supervisors at the disciplinary hearing. He also argues that the loss of good time credits deprived him of a protected constitutional liberty interest, that there was insufficient evidence to prove his alleged misconduct, and that he was innocent of the disciplinary violation. [Doc. 1, p. 14.]

      5.      Respondent contends that even if the exclusion of certain evidence at the disciplinary hearing was improper, it was harmless because the documentation or statements Gonzalez sought to have introduced did not actually help him. Moreover, there was substantial evidence in the record to support a finding that Gonzalez had engaged in the charged conduct.

**Background**

      6.      On April 6, 2010, prison staff were informed by the food service supervisor and case manager that a large amount of roast beef had been stolen from the Prep Kitchen. [Doc. 1, p. 23, exhibit (Incident Report).] The investigator reviewed recorded video camera footage of the kitchen area during the pertinent time frame that showed Gonzalez, with two other kitchen workers, involved in removing a large quantity of roast beef from the preparation counter and then placing it into a trash can, which was immediately moved out of the Prep Kitchen and placed in the hallway

near the Prep Kitchen entrance. Shortly after the trash can was placed in the hallway, another inmate removed the roast beef from the trash, placed it in a mop bucket, and exited. The trash can was returned to the Prep Kitchen, at which time Gonzalez and two other kitchen workers placed a smaller quantity of roast beef into the trash can and returned the can to the hallway area, where the roast beef was removed again and hidden in an inmate's jacket. [Id.]

7.	Upon being confronted with stealing, Gonzalez stated he did not place anything in the garbage can. Moreover, Gonzalez contended he had permission to be in the Prep Kitchen to mix drinks. [Id.]

8.	Gonzalez concedes that the Incident Report was provided to him on April 7, 2010, and that he waived his right to a staff representative. [Doc. 1, p. 12; Doc. 1, p. 25, exhibit.] Gonzalez denied all charges and stated he placed only trash in the trash can and that part of his duties included emptying the trash. [Doc. 1, p. 12.]

9.	A disciplinary hearing was held on April 13, 2010. [Doc. 1, exhibits.] After considering Gonzalez's denial of the charges, his explanation that he was working in the kitchen as scheduled, and other evidence, the DHO found that Gonzalez had violated the prohibited act of stealing. The DHO specifically noted that the video footage:

> shows you [Gonzalez] moving the trash can into position by the inmate who placed the roast beef in the trash can as you watched. You then immediately moved the trash can out in to the hallway where the roast been was placed in a mop bucket. After this you went back in to the prep kitchen and placed the trash can by the same inmate who put a second piece of roast beef in the trash can while you watched. After this you wheeled the trash can out in to the hallway a second time where another inmate placed it in his jacket. Upon watching the DVD video your denial that you did not see anyone put anything in the trash can is clearly untrue.

[Doc. 1, p. 26, exhibit (Discipline Hearing Officer Report).] The DHO concluded Gonzalez was guilty due to the "greater weight of the evidence." [Id.]

10. Respondent sanctioned Gonzalez by denying him 27 days of good time credit, along with loss of his kitchen job and time for use of the commissary and telephone. [Id.]

11. Gonzalez appealed the finding of the DHO to the Bureau of Prisons regional coordinator, who then denied the appeal. Gonzalez appealed to the Office of the General Counsel, which again was denied. [Doc. 1, p. 13; Doc. 7, p. 1.] Respondent agrees that Gonzalez exhausted his administrative remedies with respect to his claim that the conduct of the disciplinary hearing violated due process. [Doc. 7, p. 2.]

## **Analysis**

12. In this circuit, a challenge to the forfeiture of good time credits should be raised under 28 U.S.C. § 2241. Brown v. Smith, 828 F.2d 1493, 1495 (10th Cir. 1987); *see also* McIntosh v. United States Parole Com'n, 115 F.3d 809, 811 (10th Cir. 1997) (§ 2241 petitions are used to attack the execution of a sentence, including the deprivation of good-time credits and other prison disciplinary matters). Thus, Gonzalez properly presented his claim in a § 2241 petition.

13. Exhaustion of administrative remedies is a prerequisite to § 2241 relief. *See* Garza v. Davis, 596 F.3d 1198, 1203 (10th Cir. 2010). Here, Respondent concedes Gonzalez exhausted all administrative remedies with respect to his § 2241 claim. Thus, the Court proceeds to an analysis of the merits of Gonzalez's claim.

14. "It is well settled than an inmate's liberty interest in his earned good time credits cannot be denied without the minimal safeguards afforded by the Due Process Clause of the Fourteenth Amendment." Mitchell v. Maynard, 80 F.3d 1433, 1444 (10th Cir. 1996) (internal quotation marks omitted). However, because "[p]rison disciplinary proceedings are not part of a

criminal prosecution, . . . the full panoply of rights due to a defendant in such proceedings do not apply." Wolff v. McDonnell, 418 U.S. 539, 556 (1974). Revocation of good time credit will be upheld when findings of the prison disciplinary authorities are supported by some evidence in the record. Id., at 563-67.

15.     When a prison disciplinary hearing may result in the loss of good time credits, an inmate must receive:

> (1) advance written notice of the disciplinary charges; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and (3) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action.

Wolff, 418 U.S. at 563-67. Here, Gonzalez admits that he received advance written notice of the disciplinary charges before the hearing and a written statement by the factfinder of the evidence relied on and reasons for disciplinary action. [Doc. 1, Doc. 8.] Gonzalez's only argument in support of the § 2241 claim is that he was allegedly denied the opportunity to present documentary evidence in his defense that purportedly would have proven that "[Gonzalez] had the plenary rights to be in the kitchen at the time that the offense charged took place, and that he was acting within his work assignment duties in collecting and disposing of the trash can in which the alleged contraband was found." [Doc. 8, p. 2.] Gonzalez further asserts that the "testimony of his immediate supervisor would have proved [Gonzalez] was acting within his assigned duties when taking the trash can out of the kitchen and placing them outside for proper disposal." [Id.]

16.     In support of this position, Gonzales included as exhibits two written statements from his immediate supervisor, C.O. Brewer and supervisor C.O. Trujillo. [Doc. 1, exhibits, pp. 21, 22.] Brewer's statement consists of the following:

> Gonzalez Rodriguez . . . Is the Drink Staition [sic] Man. Who has to go back and forth from the Dinning [sic] Hall and the Satalight [sic] kitchen for the water and Koolaid and at time the Supervisor would ask him to take out the trash if he can. Thank you.[2]

C.O. Trujillo's statement is that "Inmate Gonzalez Rodriguez . . . works in the kitchen as the drink station person. His job is to make and supplie [sic] the juice and water for lunch." [Doc. 1, exhibits.] Gonzalez argues that the DHO excluded these statements at the disciplinary hearing and further that they would have established Gonzalez "had an obligation to be at the place in which the disciplinary violation occur [sic]; thus contrary to the disciplinary officer findings that he had been found to have help in the commission of the tefth [sic] of the roast-beef. . . ." [Doc. 8, p. 2.] Gonzalez also asserts that the supervisors' testimony would have been that the "kitchen doors remained open and that inmates not assigned kitchen detail were found at all times in the kitchen would have supported his defense and also his innocence to the charges . . . ." [Doc. 8, pp. 3-4.]

17.     None of the testimony Gonzalez sought to have introduced at the disciplinary hearing sheds any light on whether or not Gonzalez was stealing or assisting in the theft of food from the Prep Kitchen. Gonzalez implies that as long as he was performing assigned work tasks, he could not have been engaged in theft. That is not true. Clearly, the DHO found that some evidence or the greater weight of evidence demonstrated Gonzalez was performing some of his assigned tasks in the kitchen while he also was participating in or assisting in the theft of food. The two written statements, as set forth above, merely state that Gonzalez had kitchen duties during the pertinent time frame and that some of those duties included removal of trash from the kitchen. They do not rebut the prison facility's showing that Gonzalez was assisting in the unlawful removal of food from

---

[2] It appears that this handwritten statement may have been prepared by Gonzalez and signed by C.O. Brewer.

the Prep Kitchen or that he was watching other inmates place roast beef in the trash which Gonzalez then moved the garbage can to a hall where another inmate immediately took the food from the trash. Gonzalez was documented on videotape as having been watching these events occur in front of him on two occasions. There was no contradictory evidence presented, other than Gonzalez's denial of the allegations.

18. The evidence Gonzalez sought to produce was not exculpatory in nature and made no other point than to state Gonzalez worked in the kitchen and had certain duties. This is insufficient, on its face, to support a claim for deprivation of due process. *See* Mitchell v. Howard, 2011 WL 1126553, at *3 (10th Cir. Mar. 29, 2011) (a disciplinary officer's "failure to review documentary evidence alleged to be exculpatory is harmless if that evidence would not actually help the prisoner. . . .") (unpublished) (*citing* Howard v. U.S. Bureau of Prisons, 487 F.3d 808, 814 n.5; Griffin v. Brooks, 13 F. App'x 861, 864 (10th Cir. July 12, 2001) (same) (unpublished)). In sum, the evidence of the two supervisor statements would not have supported a defense to the charges against Gonzalez. Thus, to the extent any error occurred, it was harmless.

19. Dismissal under Rule 12(b)(6) for failure to state a claim requires that the court determine, while accepting all facts pled in the complaint as true and granting all reasonable inferences from the pleadings in favor of the plaintiff, whether the complaint states a cause of action for which relief can be granted. *See* Park Univ. Enters., Inc. v. Am. Cas. Co., 442 F.3d 1239, 1244 (10th Cir. 2006). After the United States Supreme Court decision in Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007), the factual allegations in a petition/complaint need only contain enough allegations of fact "to state a claim to relief that is plausible on its face." Here, the Court concludes that Gonzalez failed to "nudge[] [his] claim[] across the line from conceivable to plausible." Twombly, 550 U.S. at 570.

**Recommended Disposition**

For the reasons stated above, the Court recommends that Gonzalez's § 2241 petition and action be dismissed for failure to state a claim. Based on the circumstances of this case, the Court recommends the dismissal be with prejudice because it finds it would be futile to amend this § 2241 claim.[3]

_____
Lorenzo F. Garcia
United States Magistrate Judge

---

[3]*See* Brereton v. Bountiful City Corp., 434 F.3d 1213, 1219 (10th Cir. 2006) ("A dismissal with prejudice is appropriate where a complaint fails to state a claim under Rule 12(b)(6) and granting leave to amend would be futile.")